FILED

MAR 2 7 2000

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **CHRISTOPHER DUNN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:97CV0331 (MLM)** |
| | ) | |
| **DAVE DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the petition for a writ of habeas corpus filed by Christopher Dunn ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri. Dave Dormire ("Respondent") is the Superintendent of the Jefferson City Correctional Center. Thus, he is the proper party respondent. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [11]

### I.
### PROCEDURAL HISTORY

Petitioner is incarcerated at the Jefferson City Correctional Center pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis. Petitioner was convicted on July 18, 1991, following a trial by jury, of murder in the first degree, two counts of assault in the first degree and three counts of armed criminal action. The trial court sentenced Petitioner to a term of life without possibility of parole plus ninety years.

Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. His motion was denied on July 8, 1993.

Petitioner appealed from the trial court's judgment and from the motion court's denial of his

Rule 29.15 motion for post-conviction relief.  Pursuant to State v. Parker, 836 S.W.2d 930, 939 (Mo.

banc 1992), the Missouri Court of Appeals remanded Petitioner's case to the trial court for an

evidentiary hearing on the Batson[1] motion to determine whether the prosecutor exercised his

peremptory strikes in a racially discriminatory manner. State v. Dunn, 889 S.W.2d 65, 69 (Mo.App.

1994).  The Missouri Court of Appeals denied all other points Petitioner raised on appeal from the

trial court and affirmed the judgment of the post-conviction motion court. Id.

On March 9, 1995, the trial court conducted an evidentiary hearing and subsequently denied

the Batson motion.  The parties filed supplemental briefs with the Missouri Court of Appeals

addressing the trial court's rejection of the Batson claim.  The Missouri Court of Appeals affirmed

the judgment of the trial court on September 12, 1995.

Petitioner next filed the instant petition for habeas corpus relief, which is 141 pages in length.

Although confusing in its structure, it appears Petitioner asserts the following numerous grounds for

relief in his petition, several of which are duplicative:

1. Petitioner's conviction was obtained by a violation of the privilege against self-incrimination in that Petitioner was placed in a line-up against his will [See Petition, pp. 5, 28];

2. Petitioner's conviction was obtained by the use of evidence obtained pursuant to an unlawful unconstitutional search and seizure by the St. Louis police department [See Petition, pp. 5, 29];

3. Trial counsel provided ineffective assistance of counsel by failing to depose all of the state witnesses and Demorris Stepp and Michael Davis, for failing to withdraw from the case after Petitioner expressed his dissatisfaction with counsel's representation, for failing to object to the testimony of

---

[1]   Batson v. Kentucky, 476 U.S. 79 (1986).

- 2 -

Michael Davis, for giving instruction number 11 over Petitioner's objection in that the evidence did not support the submission of an instruction on the first degree assault of Michael Davis, and counsel erred in giving instruction number 12 over Petitioner's objection in that the evidence did not support the submission of an instruction of armed criminal action [See Petition, pp. 6, 131];

4.   The trial court erred in overruling Petitioner's motion to quash the jury panel, in allowing the state's peremptory strike of venireperson Ronald Lee Jackson, who is African-American, and in failing to require the state to provide race-neutral reasons for striking Jackson, all of which were a violation of Batson [See Petition, pp. 6, 51];

5.   The trial court erred in permitting the state to "misdefine" reasonable doubt during voir dire. [See Petition, pp. 6, 52];

6.   The trial court erred in permitting the prosecutor to comment to the jury on ten occasions that the state's evidence was uncontradicted as this constituted an impermissible comment on Petitioner's failure to testify [See Petition, pp. 6, 53];

7.   The trial court erred when it overruled Petitioner's objection to the submission of Instruction No. 4, the reasonable doubt instruction, because the instruction is unconstitutional in that it requires a burden of proof for conviction less than is required by the due process clause [See Petition, pp. 6, 54];

8.   The trial court erred in overruling Petitioner's motion to quash the indictment because the grand jury and petit jury selection were not drawn from a fair cross-section of the community [See Petition, pp. 6, 55];

9.   The post-conviction motion court erred in failing to inquire of post-conviction counsel why no amended motion was filed by counsel and whether all grounds known to Petitioner were raised [See Petition, pp. 6, 56];

10.   The post-conviction motion court erred in failing to issue findings of fact and conclusions of law on all issues as required by Missouri Supreme Court Rule 29.15(i) [See Petition, pp. 6, 57];

11.    The post-conviction motion court erred when it adopted verbatim the state's proposed findings of fact and conclusions of law [See Petition, pp. 6, 58];

12.    Trial counsel was ineffective for failing to investigate and call as alibi witnesses Arnetta Dunn and Martha Dunn; failed to investigate and call Nicole Williams as a witness, who would have testified that Petitioner telephoned her at the hospital at or near the time of the alleged offense; and failed to investigate and call Dwayne Rogers (the deceased victim's brother) as a witness, who would have testified that he was at the scene of the shooting and another person, not Petitioner, was the shooter [See Petition, pp. 6, 59];

13.    Trial counsel was ineffective for her failure to properly cross-examine the state's witness who offered inconsistent statements to the ones he made prior to trial [See Petition, pp. 6, 59];

14.    Trial counsel was ineffective for failing to object to or preserve in a motion for new trial, the state's failure to establish probable cause to arrest Petitioner; failure to show exigency in conjunction with the warrantless entry to Petitioner's mother's residence; and the state's failure to prove that consent was freely and voluntarily given to the officers conducting entry, arrest and search [See Petition, pp. 6, 8];

15.    Trial counsel was ineffective for failing to file a motion for discovery pursuant to Missouri Rule 25.03, thereby denying Petitioner the right to prepare an adequate defense [See Petition, pp. 6, 9];

16.    Trial counsel was ineffective for failing to object to, and preserve for appeal, the state's failure to prove deliberation as an essential element of first degree murder [See Petition, pp. 6, 10];

17.    Trial counsel was ineffective for failing to put on any defense; this precluded Petitioner from calling Dewayne Roger, the victim's brother, who was on the scene and would have testified that Petitioner was not the man that killed his brother [See Petition, pp. 6, 11];

- 4 -

18.  "A doctrine establishing so fundamental a substantive constitutional standard, as proof beyond a reasonable doubt, of all essential elements must also require that the facts of evidence be present." [See Petition, pp. 6, 12];

19.  Trial court erred in overruling defense counsel's motion to quash the indictment due to error in the jury process [See Petition, pp. 6, 13];

20.  Trial court erred in overruling Petitioner's objection to the submission of Instruction No. 4, because the phrase "firmly convinced" required a lesser proof than that required by the constitution [See Petition, pp. 6, 14];

21.  Trial court erred in overruling defense counsel's motion to suppress identification as the identification violated Petitioner's constitutional rights [See Petition, pp. 6, 15];

22.  Trial court erred in overruling defense counsel's motion to suppress evidence, said evidence was obtained pursuant to an unlawful search and seizure in that it was conducted without a warrant, without probable cause and was not within the scope of any exception to the warrant requirements because it exceeded the scope of any exception to the warrant requirement [See Petition, pp. 6, 16];

23.  Petitioner was denied due process and equal protection due to trial counsel's representation, which presented a conflict of interest, due to the fact that the public defender who represented Petitioner at trial was an agent of the State of Missouri, as was the prosecuting attorney and Petitioner was charged by the State of Missouri [See Petition, pp. 6, 17];

24.  Trial counsel was ineffective for failing to file a motion for appointment of a psychiatrist under the offense charged of first degree murder [See Petition, pp. 6, 18];

25.  Trial counsel was ineffective for not putting on Petitioner's alibi defense, which consisted of testimony from Karry Dunn, Angela Dunn, Arnetta Dunn, Martha Dunn, Wilford Rickman, Cathy Jackson and Crystal Johnson, all of whom would have testified that Petitioner was at home at the time of the shooting; trial counsel was ineffective for not calling Nicole Williams whose testimony would have been that she was on

the phone talking to Petitioner at the time of the shooting [See pp. 6, 19];

26.  Trial counsel was ineffective for failing to properly cross-examine the state's witness who offered inconsistent statements [See Petition, pp. 6, 20];

27.  Trial counsel was ineffective for her failure to bring to light, under cross-examination, the deal reached between the state and the state's witness, Demorris Stepp, who had been given fifteen years on probation in return for his testimony [See Petition, pp. 6, 21];

28.  Trial counsel was ineffective for her failure to subpoena telephone records of the Deaconess Hospital for May 18, at 11:45 to 12:05, which would have been consistent with the testimony of Nicole Williams, who was in the hospital when Petitioner made this call after hours, and had to be transferred through switch boards and secretaries to complete this call [See Petition, pp. 6, 22];

29.  Trial counsel was ineffective when she failed to advise the jury that, prior to being killed, the victim had shot a man on his own front porch, and that the state's witnesses were connected with the same gang as the victim and were present when the victim shot this man on his front porch [See Petition, pp. 6, 23];

30.  Trial counsel was ineffective for failing to object to the judge not issuing an instruction on premeditated murder to the jury [See Petition, pp. 6, 24];

31.  Trial counsel was ineffective for not properly cross-examining Michael Davis; the witness made several inconsistent statements which would have caused the jury to question his credibility [See Petition, pp. 6, 25];

32.  Trial counsel was ineffective for failing to utilize information known to her that was beneficial to Petitioner and would have altered the outcome of the trial and may have been instrumental in a not guilty verdict [See Petition, pp. 6, 26];

33.  Trial counsel was ineffective in her role for failing to contact thirteen alibi witnesses in Petitioner's defense; she did not investigate potential alibi witnesses [See Petition pp. 6, 27].

- 6 -

Pursuant to Court order, Respondent filed a response to Petitioner's § 2254 petition.  Due to the confusing structure of Petitioner's petition, Respondent only responded to Petitioner's first twelve grounds for relief.  Respondent filed numerous exhibits with its response.  Petitioner then filed a reply to Respondent's response, consisting of 96 pages.[2]  He also submitted twenty-eight exhibits to the Court with his reply.  The Court has reviewed the petition, the response thereto, Petitioner's reply brief, and all the exhibits filed therewith, and concludes that Petitioner's request for habeas corpus relief should be denied.

## II.
## STANDARD OF REVIEW

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") was signed into law by the President of the United States.  The AEDPA applies to all § 2254 petitions filed after its effective date.  Lindh v. Murphy, --- U.S. ---, 117 S.Ct. 2059, 2062-2067 (1997).  Petitioner's § 2254 petition was received by the Court in November 1996 and filed in December 1996.  Therefore, the Act applies to the instant petition for a writ of habeas corpus.

Title I of the AEDPA significantly amends habeas corpus law.  The amended version sets forth a more stringent standard for issuance of a writ of habeas corpus.  The text of section 2254(d) firmly establishes the state court decision as the starting point in habeas review.  Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 885 (3rd Cir. 1999).  Section 2254(d) sets forth two

---

[2]    In Petitioner's 96-page reply brief, he identifies twenty-three grounds for relief.  The first twelve are the same as those identified by Respondent.  The remaining eleven are subsumed within this Court's identification of Grounds Twelve through Thirty-Three.  Out of an abundance of caution, and in an effort to ensure that Petitioner obtains thorough review of his habeas petition, the Court elects to proceed with its analysis of Petitioner's request for habeas relief based upon the thirty-three grounds the Court believes to be identified by Petitioner in his § 2254 petition.

conditions (subsections (d)(1) and (d)(2)), at least one of which must be met before habeas relief may be granted. Id. at 887.

Section 2254(d)(1) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). This first condition entails a two-step analysis. First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court. Matteo, 171 F.3d at 885. In the absence of such a showing, the federal habeas court must, second, ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent. Under this standard, the federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See James, 187 F.3d at 869 (quoting Long v. Humphrey, 1999 WL 494096, at *2-3 (8th Cir. July 14, 1999)); Matteo, 171 F.3d at 890; Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir. 1997).

Section § 2254(d)(2) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Prior to the passage of the AEDPA, there was a presumption in habeas corpus proceedings that factual

determinations by a state court were correct. Blair v. Armontrout, 916 F.2d 1310, 1317-18 (8th Cir. 1990), cert. denied 502 U.S. 825 (1991). With the enactment of the AEDPA, the presumption of correctness still applies but the quantum of proof necessary to rebut the presumption has been increased (to the "clear and convincing" standard), making it more difficult for the petitioner to do so. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998), cert. denied, — U.S. —, 119 S.Ct. 2403 (1999).

## III.
## STATEMENT OF FACTS

For purposes of placing Petitioner's claims in their proper context, the Court offers the following statement of the facts, adopted entirely from the opinion of the Missouri Court of Appeals:

> The sufficiency of the evidence is not in dispute. The evidence, viewed in the light most favorable to the verdict, reveals that shortly after midnight on May 19, 1990, Dunn ran by a house in the 5600 block of Labadie in the City of St. Louis and shot a firearm at three fifteen year old boys who were on the front porch. The shots hit one of the boys who was taken to the hospital where he died from a gunshot wound at 2:21 a.m. the same day. The other two boys knew Dunn and identified him.

See Respondent's Exhibit 11, pg. 3.

## IV.
## ANALYSIS

### A.   GROUND ONE, GROUND TWENTY-ONE

For his first ground for relief, Petitioner asserts that his conviction was obtained by a violation of the privilege against self-incrimination in that Petitioner was placed in a line-up against his will. He elaborates:

> Petitioner was placed within a court line up which he did not wish to become a participant. As petitioner asked the officer if it is not one of his rights if he wished not to, while the said officer stated this is only for the department's file, petitioner was also placed in a line up

> with two others who had requested a line up participation that came from the same neighborhood of petitioner and who knew the witnesses and the witnesses knew them. The Supreme Court found that the police used the line up procedure which were compelling example of unfairness, even after petitioner stated he wished to have an attorney, for counsel is needed because a line up offers an opportunity for the prosecution to take advantage of the accused.

See Petition, pg. 28.

In Ground Twenty-One, Petitioner asserts a variation of this argument. He argues that the trial court erred in overruling defense counsel's motion to suppress identification as the identification violated Petitioner's constitutional rights [See Petition, pp. 6, 15];

Petitioner did not raise these grounds in his motion for new trial. Although he challenged the line-up in his motion for new trial, it was based on the allegedly suggestive circumstances of the lineup and not on the grounds that he was placed in a lineup against his will. Furthermore, Petitioner failed to raise any claim concerning the lineup in the direct appeal of his conviction.

A prerequisite for filing a federal habeas petition requires that the petitioner must have first fairly presented the federal constitutional dimensions of his federal habeas corpus claim to the state courts. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988) (quoting Laws v. Armontrout, 834 F.2d 1401, 1412 (8th Cir. 1987)). In the event that a petitioner has failed to present the federal issues to the state courts first, he has procedurally defaulted his claims and cannot subsequently bring them in a federal habeas petition. Id.

In the present action, the Petitioner did not present the claims he raises in the instant federal petition to the state courts. Thus, it would appear that he is procedurally barred from bringing his claims in the instant federal habeas petition.

Petitioner can overcome this procedural default in either of two ways: (1) by showing "cause" sufficient to excuse his default and "prejudice" resulting from that default, Wainwright v. Sykes, 433

- 10 -

U.S. 72, 87 (1977); or (2) irrespective of cause and prejudice, by showing that the error complained of resulted in petitioner's conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 485-86 (1986). A review of Petitioner's 96-page reply brief reveals that Petitioner has failed to articulate a reason sufficient to justify his failure to raise Grounds One and Twenty-One on direct appeal. Thus, he has failed to establish the requisite cause and prejudice necessary to overcome his procedural default.

Despite Petitioner's failure to show cause for his default, the Court can reach the merits of his claims if he can show that he is probably actually innocent. Wyldes v. Hundley, 69 F.3d 247, 254 (8th Cir. 1995), cert. denied, --- U.S. ---, 116 S.Ct. 1578 (1996). Petitioner asks the Court to consider his defaulted claims under this exception.

Under Schlup v. Delo, --- U.S. ---, 115 S.Ct. 851 (1995), a petitioner who raises a gateway claim of actual innocence must satisfy a two-part test. First, the petitioner's allegations of constitutional error must be supported "with new reliable evidence ... that was not presented at trial." Id. at 865. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id., at 867. See also Wyldes, 69 F.3d at 254. The actual innocence exception requires "review of procedurally barred, abusive, or successive claims only in the narrowest type of case -- when a fundamental miscarriage of justice would otherwise result." Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) (citing Schlup, --- U.S. at ---, 115 S.Ct. at 864)). Petitioner cannot prevail on the actual innocence exception. Although Petitioner implores this Court to consider his defaulted claims under the actual innocence exception, he fails to provide this Court "with new reliable evidence ... that was not presented at trial." Moreover, he has failed to establish "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, supra.

As Petitioner has failed to overcome his procedural default, the Court finds that it is procedurally barred from reviewing Petitioner's first and twenty-first grounds for habeas relief.

B.    GROUND TWO, GROUND TWENTY-TWO

For his second ground for relief, Petitioner claims that his conviction was obtained by the use of evidence obtained pursuant to an unlawful unconstitutional search and seizure by the St. Louis police department:

> The said article was obtained by the St. Louis police department the night of the crime of May 18, 1990 into the 19th day of May 2:00 a.m. when the police officer came to petitioner's mother's home stating they had a search and arrest warrant for petitioner while petitioner's mother asked them to produce the search warrant none was given to her. While inside the home the officer retrieved a picture of petitioner and showed it to the state witnesses while still in front of petitioner's mother's home. When petitioner asked the homicide commanding officer Brown in the presence about it he simply said he was only sorry for the action of his officers. Nor did petitioner's mother consent that night for the unwanted and unwarranted entry.

See Petition, pg. 29.

In Ground Twenty-Two, Petitioner raises a variation of this argument. He claims the "trial court erred in overruling defense counsel's motion to suppress evidence, as the evidence was obtained pursuant to an unlawful search and seizure in that it was conducted without a warrant, without probable cause and was not within the scope of any exception to the warrant requirements because it exceeded the scope of any exception to the warrant requirement." See Petition, pg.16.

Petitioner did not raise this claim on direct appeal. Therefore, he has procedurally defaulted this claim for purpose of federal habeas corpus review. Petitioner has failed to establish cause for failing to present this issue to the State courts first. Moreover, for the reasons discussed in the previous subsection, he cannot avail himself of the actual innocence exception. Therefore, the Court is procedurally barred from reviewing this claim and concludes that Petitioner's second and twenty-

- 12 -

second grounds for relief will be denied. See  Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir.

1988).

C.      GROUNDS THREE, THIRTEEN, FOURTEEN, FIFTEEN, SIXTEEN, TWENTY-FOUR,
        TWENTY-SIX, TWENTY-SEVEN, TWENTY-EIGHT, TWENTY-NINE, THIRTY,
        THIRTY-ONE, THIRTY-TWO

        For his third ground for relief, Petitioner asserts that he received ineffective assistance of trial

counsel because: (1) counsel failed to depose several witnesses; (2) counsel failed to withdraw from

the case after Petitioner expressed his dissatisfaction with counsel's representation; (3) counsel

failed to object to the testimony of Michael Davis; (4) counsel offered Instruction No. 11, over

Petitioner's objection, when the evidence did not support the submission of an instruction on the first

degree assault of Michael Davis; and (4) counsel offered Instruction No. 12, over Petitioner's

objection, when the evidence did not support the submission of an instruction for armed criminal

action.  Petitioner did not present any of these claims of ineffective assistance of trial counsel to the

post-conviction motion court.  Nor did Petitioner attempt to raise these issues on the appeal from the

denial of his Rule 29.15 motion.

        In Grounds Thirteen and Twenty-Six, Petitioner alleges the same claim for relief.  He asserts

that trial counsel was ineffective for failing to properly cross-examine the state's witness, Demorris

Stepp, who offered inconsistent statements to the ones he made prior to trial.  Petitioner raised this

issue in his motion for post-conviction relief.  See Petitioner's Exhibit 22.B., pp. 21.  However,

Petitioner did not raise this ground on the appeal from the denial of his Rule 29.15 motion.

Although he did assert ineffective assistance of trial counsel as one of his appellate grounds,  that

claim charged counsel with ineffectiveness for failing to investigate and call as alibi witnesses

Arnetta Dunn and Martha Dunn, failing to investigate and call as a witness Nicole Williams, and

- 13 -

failing to investigate and call as a witness Dwayne Rogers.  There was no discussion by Petitioner about counsel's failure to properly cross examine a state's witness in that claim.

In Ground Fourteen, Petitioner asserts that trial counsel was ineffective for failing to object to or preserve in a motion for new trial, the state's failure to establish probable cause to arrest Petitioner; failure to show exigency in conjunction with the warrantless entry to Petitioner's mother's residence; and the state's failure to prove that consent was freely and voluntarily given to the officers conducting entry, arrest and search.  Petitioner presented this issue to the post-conviction motion court in his 29.15 motion.  See Petitioner's Exhibit 22.B., pg. 8.  However, as with the previous grounds, Petitioner did not raise this ground on the appeal from the denial of his Rule 29.15 motion as one of the ways in which his trial counsel was ineffective.

In Ground Fifteen, Petitioner asserts that trial counsel was ineffective for failing to file a motion for discovery pursuant to Missouri Rule 25.03, thereby denying Petitioner the right to prepare an adequate defense.  Petitioner raised this claim in his Rule 29.15 motion.  See Petitioner's Exhibit 22.B, pg. 9.  However, although he raised a claim of ineffective assistance of trial counsel on appeal, he did not assert this ground as one of the ways in which his trial counsel was ineffective.

In Ground Sixteen, Petitioner claims that trial counsel was ineffective for failing to object to, and preserve for appeal, the state's failure to prove deliberation as an essential element of first degree murder.  Again, Petitioner raised this issue in his Rule 29.15 motion.  See Petitioner's Exhibit 22.B., pg. 9.  However, he failed to assert this claim on the appeal from the denial of his Rule 29.15 motion.

In Ground Twenty-Four, Petitioner claims that trial counsel was ineffective for failing to file a motion for appointment of a psychiatrist, particularly in view of his two prior suicide attempts.

- 14 -

Petitioner presented this issue in his Rule 29.15 motion.  See Petitioner's Exhibit 22.B., pg. 17. However, he failed to assert this claim on the appeal from the denial of his Rule 29.15 motion.

In Ground Twenty-Seven, Petitioner claims that trial counsel was ineffective for failing to bring to light, under cross-examination, the deal reached between the state and the state's witness, Demorris Stepp, who had been given fifteen years on probation in return for his testimony. Petitioner presented this issue to the post-conviction motion court.  See Petitioner's Exhibit 22.B., pg. 21.  However, Petitioner did not raise this issue on the appeal from the denial of his Rule 29.15 motion.

In Ground Twenty-Eight, Petitioner asserts that trial counsel was ineffective for failing to subpoena the telephone records of Deaconess Hospital for May 18, at 11:45 to 12:05, which would have been consistent with the testimony of Nicole Williams, who was in the hospital when Petitioner made this call after hours, and had to be transferred through switch boards and secretaries to complete this call.  Petitioner presented this issue to the post-conviction motion court.  See Petitioner's Exhibit 22.B., pg. 21.  However, Petitioner did not raise this issue on the appeal from the denial of his 29.15 motion.

In Ground Twenty-Nine, Petitioner claims that trial counsel was ineffective when she failed to advise the jury that, prior to being killed, the victim had shot a man on his own front porch, and that the state's witnesses were connected with the same gang as the victim and were present when the victim shot this man on his front porch. Although Petitioner raised this issue in his Rule 29.15 motion, See Petitioner's Exhibit 22.B., pg. 22, he failed to include this as a ground in his post-conviction appeal.

In Ground Thirty, Petitioner contends that trial counsel was ineffective for failing to object to the judge not issuing an instruction on premeditated murder to the jury.  Petitioner raised this issue

in his Rule 29.15 motion.  See Petitioner's Exhibit 22.B., pg. 22.  However, he did not raise this issue on his appeal from the denial of his Rule 29.15 motion.

In Ground Thirty-One, Petitioner asserts that trial counsel was ineffective for not properly cross-examining Michael Davis; the witness made several inconsistent statements which would have caused the jury to question his credibility.  Petitioner presented this issue to the post-conviction motion court.  See Petitioner's Exhibit 22.B., pg. 22.  However, he did not include this ground as one of the bases for his claim of ineffective assistance of trial counsel when he appealed the denial of his Rule 29.15 motion to the state appellate court.

In Ground Thirty-Two, Petitioner contends that trial counsel was ineffective for failing to utilize information known to her that was beneficial to Petitioner and would have altered the outcome of the trial and may have been instrumental in a not guilty verdict.  Again, although Petitioner's raised this ground in his Rule 29.15 motion, See Petitioner's Exhibit 22.B., pg. 23, Petitioner did not raise this issue when he appealed the denial of his Rule 29.15 motion to the state appellate court.

A post-conviction motion is the exclusive remedy for a claim of ineffective assistance of trial counsel upon conviction after trial.  State v. Hill, 865 S.W.2d 702, 705 (Mo.App. 1993).  See also State v. Wheat, 775 S.W.2d 155 (Mo. banc 1989), cert. denied 493 U.S. 1030 (1990) (Missouri procedure provides for review of allegations of ineffective assistance of trial counsel in a post-conviction motion).  The timely filing of a post-conviction pleading is essential to review of those allegations.  Day v. State, 770 S.W.2d 692, 695 (Mo.), cert. denied 493 U.S. 866 (1989).  Failure to file a timely motion constitutes a complete waiver.  State v. Hill, 865 S.W.2d at 705; State v. Wheat, 775 S.W.2d at 157; Day v. State, 770 S.W.2d at 696.

- 16 -

Furthermore, even if a petitioner raises allegations of ineffective assistance of trial counsel in his motion for post-conviction relief, the failure to appeal those issues to the court of appeals creates a procedural bar. Jones v. Delo, 56 F.3d 878, 882 (8th Cir. 1995)(procedural bar arises for failure to appeal post-conviction motion denial); Lowe-Bey v. Groose, 28 F.3d 816, 818 (8th Cir. 1994)(the failure to raise claim in an appeal from the denial of Rule 29.15 relief raises a procedural bar to pursuing those claims in federal court).

Here, Petitioner has procedurally defaulted his allegations of ineffective assistance of trial counsel as set forth in Grounds Three, Thirteen, Fourteen, Fifteen, Sixteen, Twenty-Four, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One and Thirty-Two. He did not present any of his allegations set forth in Ground Three to the post-conviction motion court. Moreover, he did not present any of his allegations set forth in Grounds Thirteen, Fourteen, Fifteen, Sixteen, Twenty-Four, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One and Thirty-Two to the Missouri Court of Appeals on the appeal from the denial of his Rule 29.15 motion. Thus, this Court is barred from reviewing those claims.

Petitioner can overcome this procedural default by establishing cause and prejudice for failing to present these allegations fairly to the state courts first. In Petitioner's 96-page reply brief, he appears to articulate two reasons which he believes constitute "cause" for failure to raise these grounds in his post-conviction appeal. First, he asserts fault of the part of his post-conviction counsel. Second, he claims ignorance and a lack of education. Both grounds fail.

In proceedings in which the Sixth Amendment requires legal representation, ineffective assistance of counsel is cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986). However, because a defendant is not constitutionally entitled to effective assistance of counsel in state post-conviction proceedings, see Coleman v. Thompson, 501 U.S. 722, 752 (1991); Nolan v.

Armontrout, 973 F.2d 615, 616-617 (8th Cir. 1992), a state post-conviction attorney's rendering of ineffective assistance will not constitute cause for a procedural default. Lamp v. Iowa, --- F.3d ---, No. 96-2946 (8th Cir. August 13, 1997). Moreover, a petitioner's lack of knowledge does not constitute sufficient cause to overcome the default. Stanley v. Lockhart, 941 F.2d 707, 710 (8th Cir. 1991). Therefore, the Court finds that Petitioner has failed to allege cause and prejudice sufficient to overcome his procedural default.

Although Petitioner also asks this Court to consider his claims under the "actual innocence exception," he fails to meet the necessary burden permitting the Court to do so. Petitioner fails to support his allegations of constitutional error with "new reliable evidence ... that was not presented at trial." Schlup v. Delo, --- U.S. ---, 115 S.Ct. 851, 865 (1995). Moreover, he has failed to establish "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id., at 867.

Petitioner cannot overcome his procedural default. This Court is therefore barred from reviewing Grounds Three, Thirteen, Fourteen, Fifteen, Sixteen, Twenty-Four, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, Thirty-One and Thirty-Two. Smittie Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). Petitioner's federal petition for habeas relief will be denied with respect to these grounds.

D.   GROUND FOUR

Petitioner asserts, as his fourth ground for relief, that the trial court erred in permitting the State to use a peremptory strike to remove venireperson Ronald Lee Jackson, an African-American, from the venire panel. See Petition, pg. 51.   Petitioner presented this issue to the Missouri Court of Appeals and that Court ruled as follows:

For his first point on direct appeal, Dunn contends that the trial court erred in overruling his Batson motion without considering or requiring the state to provide reasons for its use of a peremptory strike against an African-American venireperson.  We agree.

After the parties had made their peremptory strikes, defense counsel asked the court to strike the jury panel and informed the court that she was making a motion under State v. Antwine [footnote omitted] and Batson because the state had struck an African-American male from the jury panel.  Dunn's counsel advised the court that Antwine required the state to give reasons for the strikes before the court could rule.  After hearing further argument, the trial court ruled that the state did not have to give reasons for its strike because one strike out of six did not disturb the numerical composition of the jury.  The court also noted that the defendant, the three victims, and one of the investigating officers was [sic] African-American.  The court denied the Batson motion.

\*\*\*

In ruling on Dunn's Batson claim, the trial court denied the motion without requiring the state to give race-neutral explanations for its challenges.  In Antwine the Missouri Supreme Court required Missouri trial courts, when considering Batson challenges, to consider the state's explanations in determining whether a prima facie case had been made....

[I]n Parker, the Missouri Supreme Court readopted the Antwine procedure and specifically directed the trial court to take the following actions when confronted with a timely Batson motion:

> 1. The defendant must raise a Batson challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong,

> 2. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.

> 3. If acceptable reasons are articulated, the defendant has the burden to show that the proferred [sic] reasons were pretextual and the strikes were racially motivated.

See Parker, 836 S.W.2d at 939....

We conclude that under Parker this case must be remanded for an evidentiary hearing on the Batson motion to determine whether the prosecutor used his strike in a discriminatory manner. The hearing should follow the three steps outlined in Parker. In considering whether purposeful discrimination has occurred, the trial court should take into account the relevant factors set out in Parker. Id. at 939-40. The trial court shall certify to this court a record of its proceeding and its finding. The direct appeal is remanded for a hearing consistent with the holding of this opinion.

See Respondent's Exhibit 11, pp. 3-6.

Petitioner's case was remanded to the trial court. A hearing was held before the trial court on March 9, 1995, concerning the Batson issue. See Respondent's Exhibit 2. The trial court issued its "Findings of Fact and Order" on April 13, 1995, in which it stated the following:

1.      The sole issue before this Court involves the State's striking of Venireperson Ronald Jackson, an African-American male, from the panel of prospective jurors in Defendant's first degree murder trial.

2.      The only witness to testify at the hearing on behalf of the State was The Honorable Steven R. Ohmer, the then Assistant Circuit Attorney who prosecuted Defendant's case.

3.      At the hearing, the State presented three (3) explanations for striking Mr. Jackson: 1) that he knew Cathy Kelly, Regional Public Defender, and that Mr. Jackson indicated he may have attended a seminar with Ms. Kelly; 2) that Mr. Jackson's brother-in-law was on probation for stealing at the time of Defendant's trial; and 3) that he knew Cynthia Compton, another member of the prospective jury panel.

4.      While Defendant now asserts that knowing Ms. Kelly had "no bearing" on whether the juror could be fair and impartial, it was an appropriate factor for the State to consider in exercising its peremptory challenges.   The Court finds that Mr. Jackson's acquaintance with Ms Kelly was a reasonably specific and race-neutral reason for the strike. The Court further finds that Defendant failed to meet his burden that the State's reason was pretextual and that the strike was, in fact, racially motivated.

- 20 -

5.      The State's second proffered reason for striking Mr. Jackson was his brother-in-law's probation for stealing.  Again, this is a reasonably specific and race-neutral reason for the strike.  Defendant rebuts this claim by asserting the State did not strike Venirepersons Seim or Jaudes. The evidence at the hearing revealed that Ms. Seim's ex-husband had been arrested for abuse of child.  The State, however, indicated its belief that this experience would be favorable to the State.

Venireperson Jaudes, on the other hand, indicated that he had a brother who had been taken into police custody for questioning relative to a stealing.  Mr. Jaudes's brother was never charged, nor placed on probation for the incident; it is on this basis that the State distinguished the two venirepersons.

The Court finds that Defendant failed to meet his burden of showing these reasons to be pretextual.  There is no evidence that there were similarly situated venirepersons (i.e., those with relatives, by blood or by marriage, who were on probation at the time of Defendant's trial) who were not struck by the State, and that this strike was racially motivated.

6.      The State's final explanation for striking Mr. Jackson is that he knew another member of the jury panel.  In fact, the State struck both Mr. Jackson and Ms. Comptom, the prospective juror he knew.  The Court finds that this was a reasonably specific and race-neutral reason for striking the juror. Defendant failed to prove that his reason was pretextual, and that the State's strike was racially motivated.

WHEREFORE, based on the foregoing, it is the Finding, Order and Judgment of this Court that Defendant's <u>Batson</u> challenge to the State's use of a peremptory challenge to remove Venireperson Jackson is hereby OVERRULED and DENIED.  Pursuant to the Remand Order of the Court of Appeals, Eastern District in this cause, the Court hereby certifies the findings contained herein.

<u>See</u> Respondent's Exhibit 5, pp. 1-3.

The issue was again appealed to the Missouri Court of Appeals.  On September 12, 1995, that court affirmed the decision of the trial court:

[T]he issue for this court is whether the trial court's findings on the issue of discriminatory intent are clearly erroneous, a finding which turns primarily on an assessment of credibility. [citation omitted].

- 21 -

> The explanations given were race-neutral. The decisive question is whether counsel's race-neutral explanation will be believed by the trial court. [citations omitted]. The trial court accepted the explanations. We have examined the explanations and the circumstances which appear in the record. It is clear from the findings that the trial court viewed the plausibility of the state's explanations in light of the totality of the facts and circumstances of the case, as <u>Parker</u> requires. [citations omitted].

> The trial court took a permissible view of the evidence in crediting the prosecutor's explanation. We have no opportunity to review the demeanor of the prosecutor; however, there were many objective factors in the record which would support a finding of no intent to discriminate. The record discloses that, unlike Jackson's brother-in-law, the two referenced white venirepersons' relatives were not convicted of crimes. The record further discloses that neither of these venirepersons knew someone in the public defender's office or another venireperson. On the other hand, the state struck Compton, a white venireperson who knew Jackson. The record also discloses that the state struck two white venirepersons who knew persons in public defenders' offices. Although there were two African-Americans on the venire panel, the state only struck one, Jackson. All of the state' remaining peremptory strikes were exercised against white venirepersons. The three victims in this case were also African-Americans. The main homicide investigator, who prepared the photospread and conducted the line-up, was an African-American.

> The trial court's findings are not clearly erroneous. The judgment of the trial court is affirmed.

<u>See</u> Respondent's Exhibit 12, pp. 9-11.

As stated in Section II, <u>supra</u>, the pertinent beginning point for this Court's analysis is the opinion of the Missouri Court of Appeals. The Court must consider that opinion and determine whether the state court's opinion on the <u>Batson</u> issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). <u>See James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999).

- 22 -

Federal law is established on the issue of racially discriminatory peremptory strikes.  The

Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise

qualified persons from the jury based solely on their race.  Devose v. Norris, 53 F.3d 201, 204 (8th

Cir. 1995).

> Under Batson in order to establish an equal protection violation, the
> defendant must first establish a prima facie case of purposeful
> discrimination in the selection of the jury panel. [Batson, 476 U.S. 79
> (1986)] at 96.  To establish a prima facie case, the defendant must
> show that he is a member of a cognizable racial group and that the
> prosecutor exercised peremptory challenges to remove members of
> his race from the venire. Id. He then "`must show that these facts and
> any other relevant circumstances raise an inference that the prosecutor
> used [his peremptory] practice to exclude the veniremen from the
> petit jury on account of their race.'" United States v. Battle, 836 F.2d
> 1084, 1085 (8th Cir. 1987)(quoting Batson, 476 U.S. at 96).  Once the
> defendant has established a prima facie case of race discrimination,
> the government has "the burden of articulating a clear and reasonably
> specific neutral explanation for removing a venireperson of the same
> race as the defendant."  United States v. Cloyd, 819 F.2d 836, 837
> (8th Cir. 1987).
>
> Whether an explanation is neutral is a question of comparability. "It
> is well-established that peremptory challenges cannot be lawfully
> exercised against potential jurors of one race unless potential jurors
> of another race with comparable characteristics are also challenged."
> Doss v. Frontenac, 14 F.3d 1313, 1316-17 (8th Cir. 1994) [remaining
> citations omitted].

Devose, 53 F.3d at 204.  See also United States v. Brooks, 2 F.3d 838 (8th Cir. 1993), cert. denied

510 U.S. 1137 (1994).

In this case, on remand to the trial court, the prosecutor articulated clear and reasonably

specific neutral explanations for removing Venireman Ronald Lee Jackson, an African-American,

from the panel.  Moreover, he applied those reasons for striking Mr. Jackson consistently across the

venire panel.  The Missouri Court of Appeals found that the reasons offered by the State for striking

Mr. Jackson were race neutral and not a violation of Batson.

- 23 -

Petitioner has not established that the decision of the Missouri Court of Appeals with respect to the Batson challenge resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Moreover, the Court finds that the appellate court's decision did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Warren v. Smith, 161 F.3d at 360-361. Therefore, Petitioner's § 2254 petition for habeas corpus relief will be denied with respect to Ground Four.

E.     GROUND FIVE

For his fifth ground for relief, Petitioner asserts that the trial court abused its discretion in overruling his objection to the state's comments during voir dire concerning reasonable doubt. Petitioner objected on the ground that the comments constituted an improper statement of law.

Petitioner presented this issue to the Missouri Court of Appeals on direct appeal. The appellate court thoroughly addressed the issue and rejected it as follows:

> Dunn objected to the following statements made during voir dire:
>
> > [Prosecutor]: But in this criminal case as in every criminal case, the state represented by myself, has the burden of proof. I have the burden of presenting evidence to you. Everybody understand that? Any problem with that? And the burden I must meet is proof beyond a reasonable doubt. And that burden goes to the elements of the crime.
>
> At this point defense counsel objected and the court overruled the objection. The prosecutor continued:
>
> > [Prosecutor]: Again, in any crime there are specific elements or acts which must be proved before you can find the defendant guilty. There may be one act, two acts, three acts, four acts; just depends on the crime.

> And the Judge will instruct you in connection with
> what those elements are at the conclusion of the case.
> But that is what my burden goes to, beyond a
> reasonable doubt. Not all doubt or any doubt, but a
> reasonable doubt. Does anybody have any problem
> with that?

The trial court is given broad control over the nature and extent of
voir dire questioning; we do not interfere unless the record shows a
manifest abuse of that discretion. State v. Roe, 845 S.W.2d 601, 605
(Mo.App. 1992). While counsel may not define reasonable doubt for
the jury, the state may discuss the concept with the jury. Roe, 845
S.W.2d at 604. We use a three part test to distinguish definition from
discussion. For the comments to constitute reversible error, 1) the
state must state an incorrect definition of reasonable doubt before the
jury, 2) defense counsel must object, and 3) if the objection was
overruled, the state must continue to define reasonable doubt. Id.

\*\*\*

Dunn argues that the remarks were erroneous because they invited the
jury to ignore its duty to consider conflicts in the evidence in reaching
a determination of credibility. We disagree that the remarks
conveyed such a meaning. In State v. Jacobs, 866 S.W.2d 919, 920-
21 (Mo.App. 1993), on which Dunn relies, the prosecutor stated:

> Okay. Do you understand that this burden of beyond
> a reasonable doubt applies only to the elements that
> are charged in this case? In other words, there are
> three counts that are charged here in the petition.
> Youre [sic] going to hear testimony from a variety of
> witnesses, and their stories may not exactly jibe. [sic]
> Its [sic] very infrequent that you find people that will
> come in and tell you exactly the same story, whether
> its witness A and B.

Defendant objected on the grounds that the prosecutor was discussing
the sufficiency of the evidence and was argumentative. The trial
court overruled the objection and the prosecutor continued:

> Okay. Im [sic] going to repeat the last question again.
> Do you understand that the burden of reasonable
> doubt applies only to the elements that are given in
> the instructions? Youre [sic] going to have witnesses
> here that are going to give you different testimony,

- 25 -

> and you cant [sic] let that interfere.  You need to consider the reasonable doubt instruction as it -- or the burden as it applies to the case, as it applies to the elements that are charged in this case and not as to the conflicts in evidence. Is that understood?

Id. at 921.

> In Jacobs our Western District agreed with Brown that an explanation that proof beyond a reasonable doubt did not apply to matters other than the elements of the crime was not an erroneous definition of reasonable doubt. Id. at 921, 922. However, it found the prosecutor's whole question was ill-advised because the prosecutor also attempted to distinguish the jury's duty of finding each element beyond a reasonable doubt from its responsibility to determine the credibility of the witnesses.  The court found this action tended to confuse and served no useful purpose. Id. at 922.  The court held that the question was argumentative and the objection on that ground should have been sustained. Id. However, the court found the error was not prejudicial.

> In this case the prosecutor limited his question to the application of reasonable doubt to the elements.  The trial court did not abuse its discretion in overruling Dunn's objection that the prosecutor misstated the law.  Point two is denied.

See Respondent's Exhibit 11, pp. 6-10.

As stated in Section II, supra, the pertinent beginning point for this Court's analysis is the opinion of the Missouri Court of Appeals.  Considering that opinion, the Court finds that the state court's opinion on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

The scope of review by federal courts of habeas corpus petitions alleging violations of due process is narrow.  Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985).  In this case, Petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and

rendered Petitioner's entire trial fundamentally unfair. Id..See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987).

The Court has reviewed the record in its entirety and has considered the overall fairness of the trial. Review of the comments Petitioner finds objectionable reveals that the prosecutor neither defined nor misdefined reasonable doubt. The prosecutor merely told the jury that he had the burden of proving all the elements of the offense charged beyond a reasonable doubt and that his burden of proof beyond a reasonable doubt extended only to the elements of the offenses. Applying the narrow standard of review to the instant case, the Court cannot say that the prosecutor's statements during voir dire were so "'gross, conspicuously prejudicial or of such import that the trial was fatally infected.'" Culkin, 45 F.3d at 1235 (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)). This is especially so in light of the fact that the jury was properly instructed on reasonable doubt by the trial court. Williams v. Groose, 77 F.3d 259, 262 (8th Cir. 1996) (Even if the prosecutor's remarks about reasonable doubt during voir dire constituted trial error warranting reversal under state law, given the jury instructions correctly defining reasonable doubt, the prosecutor's remarks did not make Williams' trial fundamentally unfair").

Petitioner has not established that the decision of the Missouri Court of Appeals with respect to this issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Moreover, the Court finds that the appellate court's decision did not result in a decision that was based on an unreasonable determination of the facts in

- 27 -

light of the evidence presented in the State court proceeding.  Warren v. Smith, 161 F.3d at 360-361.

Therefore, Petitioner's § 2254 petition for habeas corpus relief will be denied with respect to Ground

Five.

F.      GROUND SIX

        For his sixth ground for relief, Petitioner contends that the trial court erred in permitting the

prosecutor to comment to the jury on ten occasions that the state's evidence was uncontradicted as

this constituted an impermissible comment on Petitioner's failure to testify.  Petitioner presented this

issue to the Missouri Court of Appeals.  The appellate court reviewed Petitioner's claim under plain

error and rejected it:

> During his closing argument the prosecutor reviewed specific
> evidence with the jury which the prosecutor contended was
> uncontradicted: that the victim died as a result of a gunshot wound in
> the back of the head; that St. Louis police officers chased Dunn, who
> ran, and apprehended him; that the surviving victims identified Dunn
> as the perpetrator; and that the surviving victims knew Dunn from the
> neighborhood.  The prosecutor also referred to the evidence as
> uncontradicted on two other occasions in closing and twice on
> rebuttal....
>
> ***
>
> A prosecutor's comment that the evidence is uncontroverted or
> uncontradicted, or that the defendant has failed to offer evidence, is
> not a direct or certain reference to a criminal defendant's failure to
> testify.  State v. Stanley, 860 S.W.2d 836, 837 (Mo. App. 1993); State
> v. Robinson, 641 S.W.2d 423, 426 (Mo. banc 1982).  Dunn argues
> that the assertion that certain evidence was uncontradicted constituted
> an indirect reference to his failure to testify.
>
> A prosecutor may violate a defendant's right against self-
> incrimination if, during closing arguments, the prosecutor makes an
> indirect reference which operates to focus the jury's attention on the
> fact that defendant failed to testify.  State v. Lawhorn, 762 S.W.2d
> 820, 826 (Mo. banc 1988); State v. Hemphill, 608 S.W.2d 482, 484
> (Mo.App. 1980).  An indirect reference is improper only if the
> prosecutor demonstrates a calculated intent to magnify that decision

- 28 -

> so as to call the failure to testify to the jury's attention. Lawhorn, 762 S.W.2d at 826; State v. Wood, 719 S.W.2d 756, 761 (Mo. banc 1986).
>
> In this case the specific evidence which the prosecutor characterized as uncontradicted related to conclusions, observations, and knowledge of the other witnesses. The challenged comments do not show that the prosecutor had a calculated intent to call the jury's attention to Dunn's decision not to testify and they were not reasonably likely to call the jury's attention to Dunn's failure to testify. The trial court did not plainly err in failing to declare a mistrial sua sponte. Point three is denied.

See Respondent's Exhibit 11, pp. 10-12.

Beginning with the opinion of the Missouri Court of Appeals, the Court finds that the state court's opinion on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

Federal law is clearly settled on this issue. Indirect references to a defendant's failure to testify are violative of a defendant's constitutional rights only if they "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally take them as a comment on the defendant's failure to testify." United States v. Christians, 200 F.3d 1124, 1128 (8th Cir. 1999); Feltrop v. Delo,, 46 F.3d 766, 775 (8th Cir. 1995) (quoting United States v. Montgomery, 819 F.2d 847, 853 (8th Cir. 1987)). A prosecutor's comment to the effect that "there is no contradictory evidence" is viewed as an "indirect," as opposed to a "direct," reference to a defendant's failure to testify. Christians, 100 F.3d at 1128.

Here, the statements made by the prosecutor, with which Petitioner objects, are all indirect references to Petitioner's failure to testify. The prosecutor spoke only of "uncontradicted evidence."

- 29 -

The prosecutor's references to this "uncontradicted evidence" did not manifest the prosecutor's intention to call attention to Petitioner's failure to testify. Nor were they such that the jury would naturally taken them as a comment on Petitioner's failure to testify. Therefore, the fact that these statements were made by the prosecutor did not give rise to a violation of Petitioner's constitutional rights.

Petitioner has not established that the decision of the Missouri Court of Appeals with respect to this issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Moreover, the Court finds that the appellate court's decision did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Warren v. Smith, 161 F.3d at 360-361. Therefore, Petitioner's § 2254 petition for habeas corpus relief will be denied with respect to Ground Six.

G.   GROUND SEVEN, GROUND TWENTY

For his seventh ground for habeas relief, Petitioner asserts that the trial court erred when it overruled Petitioner's objection to the submission of Instruction No. 4, the reasonable doubt instruction, because the instruction is unconstitutional in that it requires a burden of proof for conviction less than is required by the due process clause. For his twentieth ground for habeas relief, Petitioner asserts the same claim. That is, he claims the trial court erred in overruling Petitioner's objection to the submission of Instruction No. 4, because the phrase "firmly convinced" required a lesser proof than that required by the constitution.

The Missouri Court of Appeals addressed this issue thoroughly:

This issue has been thoroughly and repeatedly addressed by the Missouri Supreme Court. State v. Griffin, 848 S.W.2d 464, 469 (Mo. banc 1993); State v. Twenter, 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. State v. Weems, 800 S.W.2d 54, 58 (Mo.App. 1990).

Dunn argues we should reverse or transfer to the Missouri Supreme Court in order for the instruction to be reanalyzed in light of Victor v. Nebraska, — U.S. —, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Victor does not change the Griffin analysis.

In Victor, the United States Supreme Court reviewed reasonable doubt instructions given in a California case and a Nebraska case both of which instructed jurors that they must have "an abiding conviction to a moral certainty of the charge." The court held the use of the phrase "moral certainty" in both instructions did not render the instructions unconstitutional because other language in the two instructions kept the jury from interpreting the words "moral certainty" as suggesting a standard of proof less than due process requires.

Dunn uses this case to support his contention that the use of "firmly convinced" in MAI-CR3d 302.04 is insufficient because it does not contain other language which would make this instruction constitutional. However Dunn does not cite any case holding that the words "firmly convinced" have the same ambiguity as "moral certainty" [footnote omitted] and thus need to be "saved" by other language in the instruction.

Dunn relies instead on the Federal Judicial Center's Pattern Criminal Jury Instruction 21 on reasonable doubt to support his argument. Like MAI-CR3d 302.04 that instruction defines reasonable doubt as proof which leaves the jurors "firmly convinced" of the defendant's guilt. The MAI instruction ends with, "If you are not so convinced, you must give him the benefit of the doubt and find him not guilty." However, the Federal Judicial Center instruction ends with, "If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." The fact that the Federal Judicial Center instruction uses the phrase "if -- you think there is a real possibility that he is not guilty" in lieu of "if you are not so convinced" is not authority for a conclusion that MAI-CR3d 302.04 does not comport with due process. [footnote omitted]

> Dunn provides us with no basis to transfer this case to the Missouri
> Supreme Court for re-evaluation of <u>Griffin</u>.  Point four is denied.

<u>See</u> Respondent's Exhibit 11, pp. 12-14.

This exact issue concerning this same Missouri "reasonable doubt" instruction has been

presented by other § 2254 habeas petitioners to the Eighth Circuit Court of Appeals.  The Eighth

Circuit has consistently ruled that the merits of this claim cannot be reached because the issue is

barred by <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  <u>See</u> <u>Antwine v. Delo</u>, 54 F.3d 1357, 1370 (8th Cir.

1995); <u>Murray v. Delo</u>, 34 F.3d 1367, 1381-1382 (8th Cir. 1994).   Therefore, Petitioner's § 2254

petition for habeas relief will be denied with respect to Grounds Seven and Twenty.

H.     GROUND EIGHT, GROUND NINETEEN

For his eighth ground for relief, Petitioner contends that the trial court erred in overruling

Petitioner's motion to quash the indictment because the grand jury and petit jury selection were not

drawn from a fair cross-section of the community.  In Ground Nineteen, Petitioner asserts the same

claim for relief.  There he asserts that the trial court erred in overruling defense counsel's motion to

quash the indictment due to error in the jury process.

Petitioner presented this issue to the Missouri Court of Appeals and that court rejected his

argument as follows:

> For his fifth point Dunn asserts that the trial court erred in overruling
> his motion to quash the indictment or, alternatively in overruling his
> motion to stay proceedings because the selection procedures for the
> grand and petit juries in the City of St. Louis denied him a jury which
> reflected a fair cross section of the citizens as required by § 494.400
> through 494.505, RSMo Cum. Supp. 1989.  He contends that the
> procedures resulted in an underrepresentation of African-Americans
> and persons between the ages of 21-29.
>
> Dunn premises his argument relating to grand jury selection on a
> statistical study compiled in October 1990 by Kenneth Warren, Ph.D.
> The data involved practices prevalent in the grand jury selection

- 32 -

process from 1985 to May 1990. We have held this statistical analysis to be irrelevant to grand jury selection procedures occurring after the 1989 changes to the statutory provisions of §§ 494.400-494.505. State v. Wheeler, 845 S.W.2d 678, 681 (Mo. App. 1993). These revisions were in effect when the grand jury returned Dunn's indictment in June 1990. "Because the statistical analysis did not cover the period of time relevant to the prosecution of defendant, the data cannot be used to support his constitutional challenge to the grand jury selection procedures." Id. See also State v. Plummer, 860 S.W.2d 340, 351 (Mo. App. 1993).

Likewise Dunn's challenge to the selection of the petit jurors in the City of St. Louis has been addressed and rejected many times by this court. The Honorable Ronald M. Belt considered this challenge on a motion to stay all jury trials in the City of St. Louis in another criminal case. After a hearing, he issued an order staying all jury trials on October 16, 1990. Although he found no under-representation of racial, gender, or age groups, he found that the procedures used in granting juror continuances resulted in a non-random selection of some juror panels. The Board of Jury Commissioners immediately corrected this impropriety and Judge Belt lifted the stay order.

We have held that "[t]he evidence amply supports Judge Belt's finding of no under-representation of racial, gender, or age groups." Plummer, 860 S.W.2d at 352 (quoting State v. Landers, 841 S.W.2d 791, 793 (Mo.App. 1992)). An administrative order issued by the Board of Jury Commissioners before Dunn was indicted corrected the perceived deficiencies in the petit jury selection procedures. Wheeler, 845 S.W.2d at 681-82; Plummer, 860 S.W.2d 352. Dunn presented no evidence that the new procedures in place at the time of his trial were inadequate. Point five is denied.

See Respondent's Exhibit 11, pp. 14-16.

Beginning with the opinion of the Missouri Court of Appeals, the Court finds that the state court's opinion on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

.

- 33 -

Federal law on this issue is clearly established. A criminal defendant is guaranteed a jury chosen from a fair cross section of the community. Phea v. Benson, 95 F.3d 660, 662 (8th Cir. 1996). In order to establish a violation of this right, Petitioner must establish that: (1) African-Americans and people aged 21-20 are a distinctive group in the community; (2) the representation of African-Americans and people aged 21-29 in jury pools is not fair and reasonable in relation to the number of African-Americans and people aged 21-29 in the community; and (3) this under-representation is due to systematic exclusion of African-Americans and people aged 21-29 in the jury-selection process. Phea, 95 F.3d at 662. See also Duren v. Missouri, 439 U.S. 357, 364 (1979).

The Court concurs with the Missouri Court of Appeals that Petitioner has not presented any evidence showing *either* that the representation of African-Americans and people aged 21-29 in jury pools is not fair and reasonable in relation to the number of African-Americans and people aged 21-29 in the community *or* that this under-representation is due to systemic exclusion of African - Americans and people aged 21-29 in the jury-selection process. As the state appellate court noted, the statistical evidence presented by Petitioner dealt with a time period before new grand jury procedures were in place to better ensure fairness and thus was not applicable to Petitioner's case. Moreover, the Missouri Court of Appeals noted that in another case the St. Louis courts had analyzed St. Louis City jury petit panels for under-representation and found none and that steps had been taken to further randomize the selection system since that analysis was conducted.

Petitioner has not established that the decision of the Missouri Court of Appeals with respect to this issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Moreover, the Court finds that the appellate court's decision did not result in a decision that was based on an unreasonable determination of the facts in

- 34 -

light of the evidence presented in the State court proceeding.  Warren v. Smith, 161 F.3d at 360-361.

Therefore, Petitioner's § 2254 petition for habeas corpus relief will be denied with respect to

Grounds Eight and Nineteen.

I.      GROUNDS NINE, TEN and ELEVEN

For his ninth ground for relief, Petitioner asserts that the post-conviction motion court erred

in failing to inquire of post-conviction counsel why no amended motion was filed by counsel and

whether all grounds known to Petitioner were raised.  For his tenth ground, Petitioner asserts that

the post-conviction motion court erred in failing to issue findings of fact and conclusions of law on

all issues as required by Missouri Supreme Court Rule 29.15(i).  For ground eleven, Petitioner

asserts that the post-conviction motion court erred when it adopted verbatim the state's proposed

findings of fact and conclusions of law.

Petitioner presented each of these three grounds to the Missouri Court of Appeals on the

appeal from the denial of his motion for post-conviction relief.  The Missouri Court of Appeals

examined each of these arguments thoroughly and rejected each of them in a lengthy opinion.  See

Respondent's Exhibit 11, pp. 16-27.  Regardless of the state appellate court's decision, however,

Petitioner's ninth, tenth and eleventh grounds for relief are not cognizable in a federal proceeding

for habeas corpus relief.  Section 2254 only authorizes federal courts to review the constitutionality

of a state criminal conviction.  The Court cannot review infirmities in a state post-conviction relief

proceeding.  Williams-Bey v. Trickey, 894 F.2d 314 (8th Cir. 1990).  Thus, the Court will deny

Petitioner's § 2254 petition with respect to Grounds Nine, Ten and Eleven.

J.      GROUNDS TWELVE, SEVENTEEN, TWENTY-FIVE and THIRTY-THREE

For his twelfth ground for relief, Petitioner contends that trial counsel was ineffective

because counsel failed to investigate and call as alibi witnesses Arnetta Dunn and Martha Dunn;

failed to investigate and call Nicole Williams as a witness, who would have testified that Petitioner

telephoned her at the hospital at or near the time of the alleged offense; and failed to investigate and

call Dwayne Rogers (the deceased victim's brother) as a witness, who would have testified that he

was at the scene of the shooting and another person, not Petitioner, was the shooter.

Petitioner reiterates this claim in Ground Seventeen, where he asserts that trial counsel was

ineffective for failing to put on any defense; this precluded Petitioner from calling Dewayne Roger,

the victim's brother, who was on the scene and would have testified that Petitioner was not the man

that killed his brother.

In Ground Twenty-Five, Petitioner again asserts that trial counsel was ineffective for not

putting on Petitioner's alibi defense, which consisted of testimony from Arnetta Dunn, Martha Dunn,

and Nicole Williams.[3]

In Ground Thirty-Three, Petitioner asserts once more that trial counsel was ineffective for

failing to contact thirteen alibi witnesses in Petitioner's defense and to investigate these potential

alibi witnesses.[4]

---

[3]    In Ground Twenty-Five, Petitioner also asserts that trial counsel was ineffective for
failing to call Angela Dunn, Karry Dunn, Wilford Rickman, Cathy Jackson and Crystal Johnson
as alibi witnesses, all of whom would have testified that Petitioner was at home at the time of the
shooting. Petitioner identified these witnesses as part of his claim of ineffective assistance of
trial counsel in his motion for post-conviction relief. See Petitioner's Exhibit 22.B., pg. 19.
However, he did not identify these witnesses as part of his claim when he appealed the denial of
his Rule 29.15 motion to the Missouri Court of Appeals. Thus, Petitioner has procedurally
defaulted his claim with respect to these witnesses. He has not established cause and prejudice
for failing to identify these witnesses as part of his claim on appeal and has failed to establish
actual innocence. As a result, this Court is procedurally barred from reviewing this aspect of
Petitioner's twenty-fifth ground for relief and Petitioner's federal petition for habeas relief with
respect to this portion of his twenty-fifth claim will be denied on that basis.

[4]    Although Petitioner claims the trial attorney was ineffective for failing to investigate and
contact thirteen alibi witnesses, he only identified four of those witnesses when he appealed this
issue to the Missouri Court of Appeals. Thus, Petitioner has procedurally defaulted his claim

Petitioner presented this issue of ineffective assistance of trial counsel to the Missouri Court

of Appeals, which rejected Petitioner's argument as meritless:

> For his ninth point, Dunn contends he was denied effective assistance
> of counsel because his trial counsel failed to investigate and call
> Arnetta Dunn, Martha Dunn, and Nicole Williams as alibi witnesses
> and Dewayne Rogers as an alibi witness. In his motion Dunn alleged
> that he gave Arnetta Dunn's and Martha Dunn's names and addresses
> to counsel and they would have testified that Dunn was at home when
> the shooting occurred. He also alleged that Nicole Williams would
> have testified that she was in the hospital and Dunn telephoned her
> there at the time of the shooting. He alleged that Dewayne Rogers
> was at the scene of the shooting and would have testified that Dunn
> was not the person who killed the victim.
>
> We have already considered the claim relating to Dewayne Rogers
> and found that Dunn did not elicit substantial evidence that Dunn
> could have been located, would have testified if called, or that his
> testimony would have provided a viable defense. Accordingly, Dunn
> did not establish ineffective assistance of counsel with respect to the
> failure to call Dewayne Rogers.
>
> At the motion hearing Dunn's trial counsel testified that she decided
> not to use the alibi defense that Dunn was at home at the time of the
> shooting because it was a "weak, if not bad" defense. She spoke with
> Martha Dunn, movant's mother, on several occasions but concluded
> she would not be a good witness because she admitted she lied to the
> police on two occasions. Martha Dunn had given police Dunn's
> clothing which matched the description of the perpetrator's clothing,
> and trial counsel did not want the prosecutor to use Martha Dunn to
> put that clothing into evidence. Martha Dunn's explanation for lying
> to the police included an explanation that Dunn had escaped from a
> halfway house which would indicate prior convictions. Counsel's
> investigator interviewed Arnetta Dunn who would have contradicted
> Martha Dunn and also would have explained that she was there when
> Martha Dunn lied to police, but did not volunteer the truth because
> Dunn had escaped from a halfway house.

with respect to the remaining nine witnesses, whoever they are. He has not established cause and
prejudice for failing to identify these witnesses as part of his claim on appeal and has failed to
establish actual innocence. As a result, this Court is procedurally barred from reviewing this
aspect of Petitioner's thirty-third ground for relief and Petitioner's federal petition for habeas
relief with respect to this portion of his thirty-third claim will be denied on that basis.

Trial counsel was never able to contact Nicole Williams. Post-conviction counsel asked Williams to testify at the PCR hearing but Williams said she had to work. After the hearing the motion court continued the case in order to give Williams an opportunity to testify. Williams was subpoenaed for the next setting, but arrived too late to testify. The hearing was reset. Post-conviction counsel's investigator re-subpoenaed Williams for the third setting, but when counsel talked to Williams by telephone the night before the hearing, Williams denied she had been subpoenaed and contended she could not miss summer school and come to court. She did not appear. The court accepted counsel's offer of proof which was that Christopher Dunn called her at the hospital the night her baby was born, but she was unsure of the time of the call except that it was "maybe" after a particular television program.

The motion court found that even if the witnesses were believed they would not have provided a defense because the time was "imprecise." It also found that the decision to call witnesses is a matter of professional judgment and counsel had expressed reasons why these witnesses should not be called.

Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); Vinson, 800 S.W.2d at 448.

To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 , 80 Led.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. Id. Movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. State v. Childers, 801 S.W.2d 442, 447 (Mo.App. 1990). To show prejudice a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. Id. If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. Here, the trial court did not clearly err in finding that the decision not to call the alibi witnesses was trial strategy and that Nicole Williams' testimony would not have provided a defense.

> The trial court's finding that Dunn was not denied effective of trial
> counsel is not clearly erroneous. Point nine is denied.

See Respondent's Exhibit 11, pp. 24-27.

Upon consideration of the opinion of the Missouri Court of Appeals as the pertinent beginning point for this Court's analysis, the Court finds that the state court's opinion on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

Federal law is clearly established with respect to ineffective assistance of trial counsel. Because defense counsel is presumed to be effective, Cox v. Wyrick, 642 F.2d 222, 226 (8th Cir.), cert. denied 451 U.S. 1021 (1981), Petitioner bears a heavy burden in proving that counsel has rendered ineffective assistance. Howard v. Wyrick, 720 F.2d 993, 995 (8th Cir. 1983), cert. denied 466 U.S. 930 (1984). See also Sidebottom v. Delo, 54 F.3d 1357, 1365 (8th Cir. 1995).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must first demonstrate that his attorney failed to exercise the degree of skill and diligence that a reasonably competent attorney would exercise under similar circumstances. Strickland v. Washington, 466 U.S. 668, 687 (1984). This requires the petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id; Sanders v. Trickey, 875 F.2d 205, 207-08 (8th Cir.), cert. denied 493 U.S. 898 (1989)(the standard of conduct is that of a reasonably competent attorney; to comply with this requirement, petitioner must prove that his counsel's assistance fell below an objective standard of reasonableness, considering all the circumstances faced by the attorney at the time in question.)

The petitioner must then demonstrate that he suffered prejudice by his attorney's actions. To show prejudice required by Strickland, supra, the petitioner must demonstrate that counsel's errors were so serious as to render the result of the trial unreliable or the proceeding fundamentally unfair. Since Strickland, the United States Supreme Court has clarified the "prejudice" analysis to be applied in ineffective assistance of counsel cases. The Court stated that the petitioner must show not only that the outcome of the proceeding would have been different, but something more. The Supreme Court explained:

> [A]n analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

Lockhart v. Fretwell, --- U.S. ---, 113 S.Ct. 838, 842-43 (1993)(footnote omitted). Thus, the Supreme Court specified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

The appellate court noted that Petitioner presented no substantial evidence that the alleged eyewitness could have been located, that he would have testified if called and that if he did testify that his testimony would have presented a viable defense. The court also noted that counsel decided not to present the alibi defense because it was "weak." Trial counsel also indicated that he alibi witnesses contradicted each other when interviewed by a defense investigator and their testimony would probably have opened the door to other damaging evidence. Finally, a witness Petitioner claims would have corroborated the alibi testimony of the two alibi witnesses repeatedly failed to show up at the post-conviction hearing and the offer of proof as to the substance of her testimony indicated that testimony was so imprecise that even if believed it would not provide an alibi.

- 40 -

Petitioner has not established that the decision of the Missouri Court of Appeals with respect to this issue resulted in a decision that was contrary to, or involved an unreasonable application of, this clearly established federal law. James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Moreover, the Court finds that the appellate court's decision did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Warren v. Smith, 161 F.3d at 360-361.

The Missouri Court of Appeals reasonably applied the standards set forth in Strickland v. Washington and made reasonable findings of fact in applying those standards. Therefore, Petitioner's § 2254 petition for habeas corpus relief will be denied with respect to Grounds Twelve, Seventeen, Twenty-Five and Thirty-Three.

## K.   GROUND EIGHTEEN

It is not entirely clear what Petitioner is asserting in Ground Eighteen. There, he claims: "A doctrine establishing so fundamental a substantive constitutional standard, as proof beyond a reasonable doubt, of all essential elements must also require that the facts of evidence be present." See Petition, pp. 6, 12. Petitioner did present this exact language as one of his claims in his Rule 29.15 motion. See Petitioner's Exhibit 22.B., pg. 10. However, he did not raise this issue on the appeal from the denial of his Rule 29.15 motion.

A careful reading of Petitioner's claim suggests that perhaps he is alleging insufficiency of the evidence to support his conviction. Be that the case, this issue should have been raised on his direct appeal to the Missouri appellate court. However, Petitioner did not challenge the sufficiency of the evidence in that forum.

In either case, Petitioner has failed to present this issue to the state courts first. As such, he has procedurally defaulted this claim. Petitioner has failed to establish the cause or prejudice

- 41 -

necessary to overcome that procedural default. Additionally, Petitioner has failed to establish actual innocence. Therefore, this Court is procedurally barred from reviewing this claim in the instant habeas proceedings. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). Petitioner's eighteenth ground for habeas relief will be denied.

L.    GROUND TWENTY-THREE

For his twenty-third ground for relief, Petitioner asserts that he was denied due process and equal protection due to trial counsel's representation, which presented a conflict of interest, due to the fact that the public defender who represented movant at trial was an agent of the State of Missouri, as was the prosecuting attorney, and Petitioner was charged by the State of Missouri.

Petitioner raised this issue in his motion for post-conviction relief which he filed pursuant to Missouri Supreme Court Rule 29.15. See Petitioner's Exhibit 22.B., pg. 17. However, Petitioner did not present this ground to the Missouri Court of Appeals either on the direct appeal from his conviction or on the appeal from the denial of his Rule 29.15 motion. Thus, he has procedurally defaulted this claim. He has failed to overcome this procedural default by establishing either cause or prejudice for his failure to raise this ground on appeal, or actual innocence. Thus, this Court is procedurally barred from reviewing Ground Twenty-Three. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). Petitioner's federal petition for habeas relief should be denied on this ground.

**V.**
**CONCLUSION**

For the reasons stated above, the Court finds that the thirty-three claims raised by Petitioner in the instant federal petition for habeas corpus relief are either without merit or procedurally barred. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Christopher Dunn for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [4]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FINALLY ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability will be denied for the failure of Petitioner to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253(c)(2). See also, Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 27 day of March, 2000.

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING


AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 03/28/00 by bcrow
                    4:97cv331     Dunn vs Bowersox

28:2254 Petition for Writ of Habeas Corpus (State)


Christopher Dunn -
#181654
Jefferson City Correctional Ctr.
JCCC
P.O. Box 900
Jefferson City, MO  65102

Michael Spillane -                  Fax: 573-751-3825